Eric J. Shimanoff (ejs@cll.com)
Raphael S. Nemes (rxn@cll.com)
COWAN, LIEBOWITZ & LATMAN, P.C.
114 West 47th Street
New York, NY 10036
(212) 790-9200
*Attorneys for Plaintiff Barclays PLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

|  |  |  |
|---|---|---|
| BARCLAYS PLC, | : | Civil Action No. 1:21-cv-9667 |
| Plaintiff, | : |  |
| -against- | : | **COMPLAINT** |
| PLAID INC., | : | **JURY TRIAL DEMANDED** |
| Defendant. | : |  |
|  | : |  |

------------------------------------------------------------- x

Plaintiff Barclays PLC ("Barclays" or "Plaintiff"), by and through its undersigned counsel, as and for its Complaint against Defendant Plaid Inc. ("Plaid" or "Defendant"), alleges as follows:

## NATURE OF THE ACTION

1.     This is an action for trademark infringement and false designation of origin under the Lanham Act of 1946, as amended, 15 U.S.C. § 1051 et seq. (the "Lanham Act") and unfair competition under New York law.  Long after Barclays established trademark rights in its federally registered Rise trademarks used in connection with Barclays' fintech incubator-related services, and after Defendant had sought to do business with Barclays' Rise-branded business, Defendant – with full knowledge of Barclays' Rise trademarks – adopted and has used the nearly identical trademark FinRise for Defendant's own competing fintech incubator-related services.  Barclays seeks to prevent consumer confusion and further damage to the goodwill in Barclays' trademarks

that is likely to result from Defendant's violation of Barclays' valuable trademark rights.

## THE PARTIES

2.      Plaintiff is a public limited company organized and existing under the laws of England and Wales with offices at 1 Churchill Place, Canary Wharf, London E14 5HP, United Kingdom.

3.      Upon information and belief, Defendant is a corporation organized and existing under the laws of Delaware with offices at 1098 Harrison Street, San Francisco, California 94103, United States and 270 Lafayette Street, New York, New York 10012, United States.

## JURISDICTION AND VENUE

4.      The Court has subject matter jurisdiction over Barclays' federal trademark infringement and false designation of origin claims arising under the Lanham Act pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.  The Court has supplemental jurisdiction over Barclays' related state law unfair competition claim pursuant to 28 U.S.C. § 1367.

5.      This Court has personal jurisdiction over Defendant because, upon information and belief, Defendant, in person or through an agent: (a) transacts business within New York pursuant to NY CPLR 302(a)(1); (b) has committed tortious acts within New York pursuant to NY CPLR 302(a)(2); and/or (c) has committed tortious acts without New York causing injury to Barclays in New York, and (i) regularly does or solicits business, or engages in other persistent courses of conduct, or derives substantial revenue from goods used or consumed or services rendered, in New York, or (ii) expects or should reasonably expect its acts described herein to have consequences in New York and derives substantial revenue from interstate or international commerce, pursuant to NY CPLR 302(a)(3).

6.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b).

## FACTS

**Barclays and its RISE Trademarks**

7.      Barclays is one of the world's oldest and leading providers of financial and related services.  Founded over 300 years ago, Barclays operates in dozens of countries, including in the United States since 1932, and engages in a wide range of financial services, including commercial and corporate banking, retail banking, credit and lending, investment banking, research, private banking, cash management, credit and debit cards and mortgage banking.

8.      Barclays has used names and marks containing or comprising "Rise" (the "RISE Marks") as the basis of its cultural and corporate identity for over a decade.

9.      Barclays' core values are **R**espect, **I**ntegrity, **S**ervice, **E**xcellence and **S**tewardship. As is self-evident, the first letter of each of these values spells RISES.  These RISES values are displayed abundantly and reiterated consistently within the company, including in conference rooms and common spaces similar to as shown below, and appear in various client-facing materials.



10.      As an extension of its initial RISES mark, Barclays adopted its CREATING

OPPORTUNITIES TO RISE mark to represent its core values to the general public, including in marketing and promotion materials for its core financial services, such as shown below:





11.   Expanding on its RISE identity, Barclays launched its RISE financial technology ("fintech") incubators in 2014.

12.   Presently located in New York, London and India (and formerly located in Tel Aviv), Barclays' RISE incubators provide marketing, mentoring, networking, business

28827/180/3883226

development and financing opportunities and advice, educational programs, co-working environments and event, office, research and development spaces for fintech companies ("Barclays' Incubator Services").

13.   Beyond the physical incubators, Barclays fosters forums, opportunities and platforms for individuals in the fintech community to share ideas and collaborate on new opportunities.

14.   Over 70 fintech companies call RISE home and over 7,500 members belong to the RISE virtual community.  The majority of these companies and members interact with Barclays' RISE incubator through Barclays' RISE offices located at 43 West 23rd Street in and services provided from New York, New York.

15.   Barclays is committed to bringing underrepresented populations into the RISE community, including by developing specific programs and services targeting female entrepreneurship and exploring new ways to support diversity and inclusion in the fintech field.

16.   Barclays has extensively advertised and promoted Barclays' Incubator Services under the RISE Marks through various media, including via Barclays' websites, social media platforms, newsletters, emails and written materials, as well as via word of mouth.

17.   Barclays owns the domain name rise.barclays, which resolves to Barclays' website promoting and offering Barclays' Incubator Services in connection with Barclays' RISE Marks, including as shown in the below recent screen capture:



18.     Examples of Barclays' promotion and offering of Barclays' Incubator Services under Barclays' RISE Marks via social media are shown below:



28827/180/3883226





28827/180/3883226





28827/180/3883226





19.     Barclays' Incubator Services promoted and offered in connection with Barclays' RISE Marks have been the subject of extensive unsolicited media coverage, including in general and industry publications nationally.

20.     As a result of Barclays' widespread use of the RISE Marks in connection with Barclays' Incubator Services, Barclays' substantial investment of time, money and effort in advertising and promoting its RISE Marks in connection with Barclays Incubator Services, and the unsolicited media attention the RISE Marks have received in connection with Barclays' Incubator Services, Barclays' RISE Marks have developed substantial public recognition among members of the consuming public.  As such, the RISE Marks operate as unique source identifiers associated with Barclays and Barclays' Incubator Services and possess significant goodwill of great value to Barclays.

21.     Barclays frequently and prominently uses the tag lines "The Home of FinTech" and variations thereof in connection with its RISE Marks, including without limitation on its RISE homepage at https://rise.barclays/, as shown above.

22.     Barclays also frequently uses the term "FinTech" immediately following or within a few words of its RISE Marks, including without limitation as shown below:





28827/180/3883226



23.     Consumers thus frequently are exposed to Barclays' RISE Marks in close proximity to the term "Fin."

24.     Barclays owns the following valid and subsisting United States Trademark Registrations and Applications for its RISE Marks:

| Mark | No. | Goods/Services | Date |
|------|-----|----------------|------|
| RISE | Registration No. 6303510 | Class 35: providing facilities for business meeting purposes; rental of office equipment in co-working facilities; all the foregoing relating to the fin-tech industry<br><br>Class 43: event facilities and temporary office and meeting facilities, namely, providing conference and social meeting facilities; rental of meeting rooms; rental of temporary accommodation; all the foregoing relating to the fintech industry | Filed: May 11, 2015<br><br>Registered: Mar. 30, 2021 |

12

| | | | |
|---|---|---|---|
| **rise** | Registration No. 6303511 | Class 35: providing facilities for business meeting purposes; rental of office equipment in co-working facilities; all the foregoing relating to the fin-tech industry<br><br>Class 36: rental of offices for co-working<br><br>Class 43: event facilities and temporary office and meeting facilities, namely, providing conference and social meeting facilities; rental of meeting rooms; rental of temporary accommodation; all the foregoing relating to the fintech industry | Filed: May 11, 2015<br><br>Registered: Mar. 30, 2021 |
| **rise** | Application Ser. No. 90174786 | Class 35: business networking services in the fintech industry; business development services in the fintech industry; business consultancy and advice relating to the foregoing in the fintech industry; providing business support services for start-ups and emerging businesses in the fintech industry, namely, business consultation and management | Filed September 11, 2020 |

**Defendant's Unlawful Activities**

25.     Upon information and belief, Defendant is a financial technology services company that among other services provides data transfer networks that power fintech and digital finance products, enabling consumers to connect with their bank accounts and make payments to third parties.

26.     Upon information and belief, in or about January 2021, long after Barclays established rights in its RISE Marks, Defendant adopted and began using the mark "FinRise"

("Defendant's FinRise Mark") in connection with Defendant's provision of its own incubator-related services, including marketing, mentoring, networking, business development and financing opportunities and advice and educational programs ("Defendant's Incubator Services").

27.    Upon information and belief, prior to adopting Defendant's FinRise Mark, Defendant had sought to do business with Barclays and Barclays' Incubator Services under Barclays' RISE Marks, and Defendant therefore was well aware of Barclays' RISE Marks.

28.    Defendant's website has described Defendant's Incubator Services including as set forth below:

WHAT'S NEXT

The FinRise program will kick off with a three-day bootcamp consisting of nine workshops covering topics from navigating the policy and regulatory environment to defining a marketing and communications strategy. Following the bootcamp, startups in the cohort will be paired with internal Plaid mentors to provide tactical advice around the building and scaling of their products. Founders will also have access to a skillshare network which will provide ongoing guidance relevant to the nine workshop topics, and a dedicated account manager to help guide product development on Plaid.

Over the nine months, we'll continue to host workshops and networking opportunities with external partners to provide even more touchpoints for the startups in our cohort in addition to access to discounted services and credits from our network partners. Thank you to all of our current and new capital and network partners supporting the program.

14

**Access to capital and services:**

Access to resources & networking opportunities are critical during the earliest stages of company building. Through Plaid's partnership with a network of purpose-built venture capital firms, network service providers, and accelerators, startups in our program will have access to networking opportunities, discounted services and ad credits, and pitch practice.

**Resources to accelerate growth:**

Entrepreneurs will participate in a three-day virtual bootcamp with workshops on relevant technical, product, and business topics to help guide early business development. The bootcamp will be led by a combination of Plaid experts and other thought leaders with a deep dive into topics like communication and storytelling, engineering best practices, navigating the policy and regulatory landscapes, and designing user-centric experiences.

**Ongoing mentorship and support:**

Following the bootcamp, participants will have access to ongoing support through a nine-month period including:

- **Dedicated account manager:** a day-to-day contact from Plaid who provides product best practices and helps them develop their business
- **FinRise skillshare network:** an internal network that founders can leverage for ongoing guidance on topics covered in the bootcamp (e.g., navigating the policy and regulatory landscapes)
- **Mentorship from Plaid leaders:** founders in the program will be paired with Plaid leaders who can offer guidance on the early stages of company building
- **A community:** a space to network and learn from other entrepreneurs in the program with the opportunity to mentor future cohorts

29.     Upon information and belief, Defendant has promoted and offered Defendant's Incubator Services under Defendant's FinRise Mark via various media, including Defendant's website and social media accounts as shown below:



MARCH 24, 2021

# Introducing Plaid's FinRise Class of 2021

—

**Nell Malone & Bhargavi Kamakshivalli**

*We're excited to announce Plaid's FinRise inaugural cohort of five early-stage fintech startups*

A few months ago, we announced the launch of FinRise, an incubator program to empower early-stage founders who are Black, Indigenous, or People of Color with foundational support in their entrepreneurial journey. Our vision as a company has always been to power a financial ecosystem that serves everyone, and our FinRise program is an extension of that.

Since launch, we've received over 100 applications and offers to support of our efforts from the broader ecosystem – all affirming our commitment to the FinRise program and our drive to promote a more diverse and inclusive fintech ecosystem.

We received applications from founders with use cases varying from payments, to financial literacy, to ecommerce. Our selection process was two fold: an initial review from the core FinRise program team and an additional review from an independent Internal Advisory Board, evaluating applicants based on our core criteria [1], recommended stage [2], and the ability for the FinRise program to provide value.

JANUARY 21, 2021

# Leveling the playing field to enable more voices in fintech

Nell Malone & Bhargavi Kamakshivalli

*Plaid launches FinRise, an incubator program to empower early-stage entrepreneurs that are Black, Indigenous, or People of Color*

---

## In other news

**Leveling the playing field to enable more voices in fintech:** Plaid has launched FinRise, a nine-month program designed to support early-stage Black, Indigenous, People of Color (BIPOC) founders in launching their businesses.



## Apply to FinRise

Thank you for your interest, we have closed applications for the 2021 cohort of FinRise program

17

28827/180/3883226





30.     Upon information and belief, Plaid's FinRise incubator is designed to support early-stage Black, Indigenous and People of Color entrepreneurs in launching their businesses.

31.     Defendant's FinRise Mark incorporates Barclays' RISE Mark in full and merely adds the descriptive term "fin," short for "financial," a term that describes Barclays and its services, including Barclays' Incubator Services.   Moreover, as noted above, consumers frequently are exposed to Barclays' RISE Marks in close proximity to the term "fin," including in Barclays "The Home of FinTech" tag line and throughout Barclays' RISE website.

32.     Upon information and belief, Defendant's Incubator Services are identical or closely related to Barclays' Incubator Services.

33.     Upon information and belief, Barclays and Defendant both target the same consumers and at least one member of Defendant's initial FinRise cohort also applied to or inquired about Barclays' RISE incubator.

34.     Upon information and belief, Barclays and Defendant have marketed and provided their respective services via the same or similar channels, including within the fintech industry.

35.     Upon information and belief, Defendant has promoted and advertised Defendant's Incubator Services under Defendant's FinRise Mark to consumers in New York and specifically has targeted consumers in New York.

36.     Upon information and belief, at least two of Defendant's initial cohorts, OfColor and Walnut, are based in New York, New York.

37.     Upon information and belief, Plaid has offices and dozens of employees who work in New York, New York.  According to Plaid's website: "Our second largest office is in the lively SoHo neighborhood."  Upon information and belief, until approximately two years ago, Defendant maintained offices at 54 West 21st Street in New York, New York, just two blocks north of and between the same cross avenues as Barclays' RISE incubator offices.

38.     Upon information and belief, Nell Malone, Defendant's FinRise Program Director,

is based in and provides Defendant's Incubator Services under Defendant's FinRise Mark from New York, New York.

39.     Upon information and belief, Ariel Bong, Engineer at Defendant, is based in and provides Defendant's Incubator Services under Defendant's FinRise Mark from Brooklyn, New York and/or New York, New York.

40.     Upon information and belief, Marcus Crowder, Software Engineer at Defendant, is based in and provides Defendant's Incubator Services under Defendant's FinRise Mark from Queens, New York and/or New York, New York.

41.     Upon information and belief, Barclays and Defendant both have dedicated initiatives to provide their services to populations underrepresented in the fintech field.

42.     Defendant's actions as described herein are likely to cause consumer confusion as to the source and origin of Defendant's Incubator Services and to cause mistake, or to deceive the public by misleading consumers into believing that Defendant's Incubator Services emanate from, are approved, authorized, endorsed or sponsored by, or are in some way associated or connected with Barclays, Barclays' RISE Marks and/or Barclays' Incubator Services.

43.     While Barclays applauds Defendant's mission, similar to that of Barclays, to promote diversity and inclusion in the financial technology field, Defendant is not entitled to infringe upon Barclays' valuable trademark rights in the process.

44.     Barclays has not authorized Defendant's actions as described herein.  To the contrary, Barclays specifically has objected to Defendant's actions as described herein, both orally and in writing.  Despite multiple requests by Barclays, Defendant has refused to cease and desist from its use of Defendant's FinRise Mark.

45.     Upon information and belief, unless and until Defendant is enjoined from any

further unauthorized exploitation of the RISE Marks, Defendant will continue to use Defendant's FinRise Mark in connection with Defendant's Incubator Services in violation of Barclays' valuable trademark rights.

46.    Upon information and belief, by virtue of its unlawful conduct described above, Defendant has made or will make substantial profits and gains to which it is not in law or equity entitled.

47.    Upon information and belief, Defendant's unlawful conduct described above has resulted in a loss of profits by Barclays and has otherwise caused damage to Barclays' reputation and goodwill.

48.    Upon information and belief, Defendant's actions described above have been undertaken in willful and blatant disregard of Barclays' rights.

49.    As a result of Defendant's unlawful actions described above, Barclays has been or will be damaged and has suffered, and will continue to suffer, immediate and irreparable injury for which Barclays has no adequate remedy at law.

## COUNT I
### (Trademark Infringement of Registered Mark, Lanham Act §32(1))

50.    Barclays repeats and realleges the allegations set forth in paragraphs 1-49 above with the same force and effect as if set forth fully herein.

51.    Defendant's conduct as described above constitutes infringement of Barclays' federally registered RISE Marks, United States Registration Nos. 6303510 and 6303511 in violation of Section 32(1) of the Lanham Act, 15 U.S.C. §1114(1).

## COUNT II
### (False Designation of Origin, Lanham Act, §43(a)(1)(A))

52.    Barclays repeats and realleges the allegations set forth in paragraphs 1-51 above

with the same force and effect as if set forth fully herein.

53.     Defendant's conduct as described above constitutes false designations of origin in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. §1125(a)(1)(A).

### COUNT III
### (Unfair Competition)

54.     Barclays repeats and realleges the allegations set forth in paragraphs 1-53 above with the same force and effect as if set forth fully herein.

55.     Defendant's conduct as described above constitutes unfair competition under the common law of the State of New York.

WHEREFORE, Barclays respectfully requests that this Court enter judgment in Barclays' favor and against Defendant as follows:

A.     Ordering that Defendant and its agents, servants, representatives, employees, successors and assigns, and all those persons or entities in active concert or participation with any of them who receive actual notice of the injunctive order, be enjoined, preliminarily and permanently, from using the FinRise Mark, any marks or names containing or comprising "RISE" and any other marks or names confusingly similar to Barclays' RISE Marks.

B.     Ordering that Defendant be directed to file with the Court and serve upon Barclays, within 30 days after entry of final judgment, a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the provisions set forth in Paragraph A above.

C.     Ordering Defendant to account to Barclays for all gains, profits and advantages derived from Defendant's wrongful acts, together with interest therein.

D.     Ordering Defendant pay to Barclays any damages sustained by Barclays by reason of Defendant's wrongful acts in an amount to be determined at trial, together with interest thereon.

E.      Ordering Defendant pay to Barclays trebled damages.

F.      Ordering that Barclays recover its reasonable attorneys' fees from Defendant, together with the costs of this action.

G.      Ordering that Barclays be granted such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Barclays demands a trial by jury on all issues triable as such.

Dated:   November 22, 2021                    Respectfully submitted,
                                             COWAN, LIEBOWITZ & LATMAN, P.C.


                                             By: _____
                                                  Eric J. Shimanoff (ejs@cll.com)
                                                  Raphael S. Nemes (rxn@cll.com)
                                             114 West 47th Street
                                             New York, NY 10036
                                             (212) 790-9200
                                             *Attorneys for Plaintiff Barclays PLC*